UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| RONNIE HOLBROOK,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil No. 09-107-ART<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Ronnie Holbrook, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner"), which denied his September 26, 2006, application for supplemental security income ("SSI"). Because the Commissioner's decision is supported by substantial evidence, the Court denies Holbrook's motion for summary judgment, R. 12, and grants the defendant's, R. 17.

## BACKGROUND

Holbrook filed this application for SSI on September 26, 2006. Transcript ("Tr.") at 9. At that time, Holbrook was 44 years old. *Id.* at 9, 17. He alleged his disability beginning February 15, 1996. *Id.* Holbrook has never had a full-time job. *Id.* at 166-67. He suffers from seizures, psychological problems, and asthma. *Id.* at 165-66. Holbrook has applied for SSI benefits several times in the past. His most recent application was denied on July 26, 2006. *Id.* at 48-60.

The Social Security Administration denied the instant application first on February 9, 2007, *id.* at 80-83, and then again upon reconsideration on June 6, 2007, *id.* at 84-86. Thereafter, Holbrook filed a written request for a hearing on August 8, 2007. *Id.* at 89. On January 14, 2009, Administrative Law Judge Andrew J. Chwalibog ("ALJ") conducted a hearing. *Id.* at 19-42. Holbrook and vocational expert Donald J. Woolwine testified.

At the hearing, Holbrook testified that he has never had a full-time job because of his seizures. *Id.* at 25. He stated that his insomnia, schizophrenia, and his bulged discs also keep him from working. *Id.* at 26. Medication, he said, sometimes controls his seizures, but he does not always have it since he lacks medical insurance. After Holbrook's seizures, he feels weak and has trouble remembering things. *Id.* at 33. He stated that he takes Remeron for other psychiatric problems. *Id.* at 28. Holbrook also takes Tramadol for back pain. *Id.* at 30. He mentioned that he suffers from insomnia. *Id.* at 31-32. At the time of hearing, Holbrook lived in a camper that his father owned. *Id.* at 32. His father and his uncle assisted him with daily activities.

Vocational expert Donald Woolwine testified at Holbrook's hearing. *See id.* at 40-42. The ALJ asked Woolwine about the work capabilities of a person in the medium exertional framework, with the additional limitations of: avoiding concentrated exposures to dust, fumes, gases, and poor ventilation; avoiding hazards, dangerous machinery, and heights; never climbing ladders or scaffolds; minimal ability to read and write; and requiring hands-on instruction. *Id.* at 40.

Woolwine identified occupations in the national and regional economy that a person with

those limitations could perform. *Id.* at 41. He defined the regional economy as Kentucky, Ohio, and West Virginia. *Id.* In the medium category, he suggested work as a product weigher (12,000 positions nationally and 1,200 regionally) or a park packer (50,000 positions nationally and 5,000 regionally). In the light category, such an individual could work as a night guard (30,000 positions nationally and 3,000 regionally) or a production worker (40,000 positions nationally and 4,000 regionally). In the sedentary category, Woolwine suggested employment as a product assembler (30,000 positions nationally and 3,000 regionally) and a product inspector (40,000 positions nationally and 4,000 regionally). *Id.* The ALJ also asked Woolwine whether a person with the full impairments to which Holbrook testified (more limited than the previous hypothetical question) could perform any full-time work at all. Woolwine answered that such a person could not. *Id.* Woolwine stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). *Id.* Holbrook's attorney did not question Woolwine. *Id.*

## THE ALJ'S DECISION

Following the hearing, the ALJ issued a decision on April 9, 2009, finding that Holbrook was not disabled and therefore not entitled to SSI. *Id.* at 9-18. In evaluating Holbrook's claim of disability, the ALJ conducted the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. at 11-18; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). First, he found that Holbrook has not engaged in substantial gainful activity since his alleged onset of disability. Tr. at 11. Second, he found Holbrook's asthma and history of seizures to be severe impairments, but did not find his mental or other impairments to be severe. *Id.* at 11-12. Third, he concluded that the impairments did not meet or medically equal any listed in 20 C.F.R.

3

pt. 404, subpt. P, app. 1. *Id.* at 13. The ALJ then determined Holbrook's residual functional capacity ("RFC"). *Id.* at 14-17. He found that Holbrook has the capacity to perform medium work as defined in 20 C.F.R. § 416.967(c), except that he is also subject to additional restrictions. Holbrook should avoid concentrated exposures to dust, fumes, gases, and poor ventilation. He should avoid all work near hazards, dangerous machinery, and heights. He should never climb ladders or scaffolds. Because of his limited education, Holbrook requires hands-on type work or oral instructions. *Id.* at 14. At the fourth step, an ALJ usually determines whether the claimant can perform his past relevant work. The fourth step was irrelevant here because Holbrook has never worked. *Id.* at 17.

At the fifth step, the ALJ found that there are significant jobs in the national economy that Holbrook can perform. *Id.* at 17-18. The ALJ relied on Woolwine's testimony of the representative occupations in the national and regional economies. *Id.* at 18. He also found that, pursuant to Social Security Ruling 00-4p, Woolwine's testimony was not in conflict with the information in the DOT. *Id*; *see* Soc. Sec. Rul. 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

On May 29, 2009, Holbrook filed his appeal of the ALJ's decision. *Id.* at 1. The record does not reflect a denial by the Appeals Council; however, Holbrook states that he exhausted the administrative appeals process, R. 2 ¶ 4, and the United States does not dispute that fact. Holbrook now seeks judicial review in this Court. He filed a motion for summary judgment, R. 12, as did the defendant, R. 17.

## DISCUSSION

In his motion, Holbrook only challenges the ALJ's analysis at Step 5, the finding that

there are jobs in the national and regional economies that Holbrook could perform. He argues that the Commissioner failed to sustain his burden at this step. R. 12 at 2-3. He disputes the ALJ's finding of the number of jobs in the national and regional economy, and the full-time nature of the work. Since Holbrook's arguments are without merit, the Court denies his motion for summary judgment and grants the defendant's motion.

After the ALJ found that Holbrook had no past relevant work, the burden shifted to the ALJ to show by substantial evidence that Holbrook has the capacity to perform other substantial gainful activity that exists in the national economy. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" question, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Varley*, 820 F.2d at 779 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

The ALJ did rely on testimony from the vocational expert. Holbrook does not challenge that the ALJ's hypothetical accurately portrayed his impairments, because he does not challenge the RFC determination upon which the hypothetical questions were based. *See tr.* at 14-16, 40. Indeed, Holbrook states in his motion that he accepts the ALJ's RFC determination. R. 12 at 2.

**I.     The number of jobs in the national and regional economy**

Holbrook argues that Woolwine had no support for the occupational numbers that he

provided. Holbrook does not believe there are so many regional jobs available. R. 12 at 2-3. He is skeptical of Woolwine's testimony that for each occupation listed, 10% of the national number of jobs are available in the Kentucky, Ohio and West Virginia region. That region constitutes only 5.7% of the national population. *Id.* at 4.

The ALJ's calculation of the regional number, however, is irrelevant, because the standard is the existence of jobs in the national economy. 20 C.F.R. § 404.1566 (2009) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether–(1) Work exists in the immediate area in which you live . . ."); *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("The [Social Security] Act, its legislative history and the regulations make it clear that the test is whether work exists in the national economy, not in plaintiff's neighborhood."). Moreover, even a comparatively small number of local jobs constitutes a "significant number of jobs" within the meaning of 42 U.S.C. § 423(d)(2)(A). *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) ("proof of more than 1350 jobs in the local economy which [plaintiff] could perform despite his reduced capacity established the existence of work in significant numbers."). Thus, the ALJ's decision is supported by substantial evidence.

Further, the ALJ need not question the testimony of a vocational expert who credibly states that his testimony does not conflict with the DOT. *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). The Sixth Circuit recently rejected an argument precisely like Holbrook's. *Lindsley*

*v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). The claimant argued that "the ALJ did not interrogate [the vocational expert] with sufficient rigor about potential conflicts between [the vocational expert's] views and the DOT." *Id.* The court held, however, that the vocational expert "credibly testified that there was no such conflict. And Lindsley was afforded a full opportunity to cross-examine [the vocational expert]. The ALJ had no duty under S.S.R. 00-4p to interrogate him further." *Id.* (citing *Martin*, 180 F. App'x at 374). Here, the ALJ asked whether Woolwine's testimony conflicted with the DOT, and Woolwine responded no. Tr. at 41. Holbrook's attorney did not cross-examine Woolwine about the number of jobs, or question him at all. *Id.* Thus, the ALJ fulfilled his obligation and did not err in accepting Woolwine's testimony as substantial evidence.

**II.     The full-time nature of the jobs provided**

Holbrook argues that the ALJ erred by failing to ask Woolwine whether the jobs he provided were part-time or full-time. R. 12 at 5-6. He relies upon Social Security Ruling 96-8p, which explains that an individual's RFC must be based on "remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1 (July 2, 1996) ("Ruling 96-8p"). Holbrook asserts that the ALJ must make specific findings about his ability to perform alternative *full-time* jobs in order to prove that Holbrook can still perform substantial work activity.

Holbrook's argument misconstrues Ruling 96-8p, which applies to RFC determinations, not to Step 5 decisions about other available employment. Prior to Ruling 96-8p, the Sixth

7

Circuit stated that the regulations regarded part-time work as "substantial work activity." *Conn v. Sec'y of Health and Human Serv.*, 51 F.3d 607, 610 (6th Cir. 1995) (citing 20 C.F.R. § 404.1572(a) (1989) (citation omitted)). Thus, the ALJ did not have to find that the claimant had the ability to work full-time. Ruling 96-8p changed that for RFC determinations, but the Sixth Circuit has not addressed whether the ruling alters the ALJ's obligations at Step 5. The Seventh Circuit, however, rejected an argument like Holbrook's. *See Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009) (holding that a vocational expert may testify as to the numbers of jobs that a claimant can perform without specifically identifying the percentage of those jobs that are part-time). The court in *Liskowitz* pointed out that the defendant there, like Holbrook, "made no effort to rebut the [vocational expert's] testimony in this case." *Id.* The court went on to explain that Ruling 96-8p does not apply to the vocational expert's testimony, but to the ALJ's functional capacity determination. *Id.* Thus, Holbrook's argument is similarly rejected because it misapplies Ruling 96-8p.

Even if Holbrook's interpretation of Ruling 96-8p were correct, his argument still fails because the ALJ's alternative work determination at Step 5 sufficiently focused on an eight-hour, full-time work schedule. The ALJ found Holbrook could perform medium work; the DOT defines "medium" work as "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Soc. Sec. Rul. 83-10p, 1983 WL 31251, at *6 (1983). Additionally, the ALJ posed his final hypothetical question to Woolwine in terms of full-time work. He asked if a person had all the limitations that Holbrook described, "[w]ould there be any full time work?"

Tr. at 41. This shows that the ALJ considered full-time work when making his determination, although he did not explicitly state it in each of his questions. Thus, the ALJ identified, based on substantial evidence, alternative full-time work that Holbrook could perform.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)　　The plaintiff's motion for summary judgment, R. 12, is **DENIED**;

(2)　　The defendant's motion for summary judgment, R. 17, is **GRANTED**; and

(3)　　Judgment shall enter concurrently with this memorandum opinion and order.

This the 23rd day of March, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge